IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOLETTE FERDINAND | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 07-3305 |
| SAVE-A-LOT/SUPERVALU, and SECURITY ASSOCIATES, INC., | : | |
| Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                               **APRIL 14, 2008**

Presently before this Court is a Motion for Summary Judgment filed by Defendant Save-A-Lot/Supervalu ("Supervalu"). For the following reasons, summary judgment is granted in favor of all Defendants.

**I.    BACKGROUND**

On August 1, 2005, Plaintiff Yolette Ferdinand ("Ferdinand"), a resident of Philadelphia, went to her neighborhood Supervalu food store at around 1:00 p.m. to purchase plantains. Upon entering the store, she picked up a box top, which Supervalu customers use as shopping baskets, and headed for the produce section. Ferdinand collected what she thought were twelve plantains, and proceeded to the cash register to pay for them. The cashier counted only eleven plantains. Nonetheless, Ferdinand still paid for twelve, intending to return to the produce section to pick up the twelfth plantain before she left the store.

A security guard named William Hanton ("Hanton") was working at Supervalu on August 1, 2005. Hanton helped prevent shoplifting by monitoring activities in the store from his post at

the front of the building, near the exit. On the day in question, he observed Ferdinand return to the produce area after making a purchase, pick up a plantain, and then leave the store via an unopen cash register. Hanton did not see Ferdinand pay for the plantain. Ferdinand stated that she motioned to the cashier after she picked up the plantain, but Hanton did not see this either.

As Ferdinand walked out of the store, Hanton asked her whether she had paid for the vegetable. Ferdinand claims that she said that she had paid for it. However, she did not stop to tell him this, but rather continued to exit the store. Hanton did not hear Ferdinand tell him that she had paid, nor did she show him the receipt that she held in her hand. He then followed her into the parking lot, and told her that she had to pay for the plantain. Ferdinand said he called her a thief as he followed her. Ferdinand chose not to show Hanton her receipt, and testified at her deposition that she did not show him the receipt because he never asked for it. She also said that she knew that she had nothing to fear because she had not stolen anything. As Hanton was trying to prevent Ferdinand from leaving with unpaid merchandise, she continued walking towards her car without stopping. As she attempted to enter her car, Hanton grabbed her by the arm to stop her from leaving.[1] He then took the plantain from her, which was laying on top of the box top she was carrying, and went back inside the store.

Ferdinand, who was upset and began crying, followed Hanton back into Supervalu. Once inside, she talked to the cashier, and them asked to speak with a manager. She then demanded that Supervalu call the police. No one offered to make the phone call, nor did they give her a

---

[1] Hanton's version of this event differs from Ferdinand's presentation. Hanton claims that he did not touch the Plaintiff. He claims that the box top was on the front seat of her car, and he reached into the car to take the plantain that was laying on top. However, as the facts must be viewed in a light most favorable to the movant, this Court accepts Ferdinand's version of the event. This Court notes that Supervalu has presented Ferdinand's version of the facts in its Motion as well.

phone with which she could make the call. Ferdinand therefore walked across the street and called the police from a friend's office building. An officer arrived, assessed the situation, and ultimately asked Ferdinand whether she wanted the security guard to apologize. Ferdinand ignored the offer, and went home. At about 10:00 p.m. that evening, she went to the hospital with complaints of pain in her arm, neck, shoulder, and back, and for scratches on her arm, which she claims she suffered when Hanton grabbed her arm. The hospital took X-rays, and gave her Motrin for the pain. Ferdinand received no further medical treatment for the pain. The scratches on her arm healed after a few days.

On June 19, 2007, Ferdinand commenced an action in the Philadelphia County Court of Common Pleas. She raised eight claims in her Complaint. Count I alleges excessive force. In Count II, she alleges assault and battery. Count III states a claim for invasion of privacy and false light. In Count IV, she alleges damages. The Complaint does not state a fifth claim. Count VI alleges negligent hiring/training/retention. Count VII states a claim for negligent supervision. Count VIII alleges violations of 42 U.S.C. § 1981, and Count IX states a claim for punitive damages. Ferdinand has since voluntarily withdrawn Count VIII, the federal discrimination claim, and only the state law claims remain.

Supervalu removed the action to this Court on August 10, 2007, and filed its Motion for Summary Judgment on March 3, 2008. In that Motion, Supervalu argues that it cannot be held vicariously liable for the state law claims brought as a result of Hanton's actions since it believes he is an employee of Security Associates, Inc. ("Security"), and works for Supervalu as an independent contractor. Alternatively, Supervalu argues that even if it could be held liable, it has immunity under the Pennsylvania Retail Theft Act. Ferdinand filed a response in opposition to

summary judgment. Security also filed a response. It contests Supervalu's characterization of Hanton as an independent contractor, but agrees with Supervalu that immunity exists for both Defendants regardless of Hanton's employment status.

## II.  STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). A court must determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In the absence of any material factual disputes, summary judgment must be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

This Court is required, "before the evidence is left to the jury," to determine "whether there is any [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251. A "judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" Id. at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. "[S]ummary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party[.]" Id. at 251.

**III.   DISCUSSION**

    **A.   Employment Status of Security Guard**

The first issue before this Court is whether Hanton was an employee of or an independent contractor for Supervalu.  The legal distinction between independent contractors and employees is well established.  "The characteristic of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result."  <u>Feller v. New Amsterdam Cas. Co.</u>, 70 A.2d 299, 300 (Pa. 1950).  "It is not the fact of actual interference or existence of control by the employer, but the existence of the right or authority to interfere or control which renders one a servant rather than an independent contractor."  <u>Id.</u>  "It is the exclusive function of the jury to determine, under the evidence, the precise nature of the relationship, except where the facts are not in dispute, in which latter event the question becomes one for determination by the court."  <u>Id.</u>  These Defendants disagree about whether Hanton is an employee or an independent contractor, thus this Court cannot make a determination on this issue.  Nonetheless, this dispute is immaterial.  Immunity under the Retail Theft Act would apply regardless of Hanton's employment status as discussed more fully below.

    **B.   Qualified Immunity Under Pennsylvania Retail Theft Statute**

The thrust of the Defendants' argument is that they are entitled to immunity from all of the state law claims Ferdinand raised in her Complaint by virtue of 18 Pa. Cons. Stat. Ann. § 3929, the Pennsylvania Retail Theft statute.  The statue states in relevant portion that:

    (d) Detention.– A peace officer, merchant or merchant's employee or an agent

>under contract with a merchant, who has probable cause to believe that retail theft has occurred or is occurring on or about a store or other retail mercantile establishment and who has probable cause to believe that a specific person has committed or is committing the retail theft may detain the suspect in a reasonable manner for a reasonable time on or off the premises for all or any of the following purposes: to require the suspect to identify himself, to verify such identification, to determine whether such suspect has in his possession unpurchased merchandise taken from the mercantile establishment and, if so, to recover such merchandise, to inform a peace officer, or to institute criminal proceedings against the suspect. Such detention shall not impose civil or criminal liability upon the peace officer, merchant, employee, or agent so detaining.

18 Pa. Cons. Stat. Ann. § 3929(d). Section (d) is a codification of the shopkeeper's privilege, and when applicable, it provides merchants with immunity from lawsuits brought against them for detaining persons suspected of shoplifting. Whether immunity applies ultimately depends on whether the merchant had probable cause to believe a retail theft was occurring, and whether the suspect was detained in a reasonable manner for a reasonable time. However, before reaching those questions, this Court must determine whether one or both of the Defendants is a merchant.

A merchant is defined as "[a]n owner or operator of any retail mercantile establishment or any agent, employee, lessee, consignee, officer, director, franchisee or independent contractor of such owner or operator." Pa. Cons. Stat. Ann. § 3929(f). Given the breadth of this definition, and the fact that it specifically applies to owners, employees, and independent contractors, it is clear that both Defendants would qualify as a merchant. Consequently, the dispute over the security guard's employment status does not prevent the disposition of the present Motion.

The definitions section of the Retail Theft Act also states that the phrase "[p]remises of a retail establishment . . . [i]ncludes but is not limited to, the retail mercantile establishment[,] any common use areas in shopping centers and all parking areas set aside by a merchant or on behalf of a merchant for the parking of vehicles for the convenience of the patrons of such retail

mercantile establishment." Id.  Therefore, Defendants are immune from this lawsuit even though the stop took place in the parking lot outside of the store.

Probable cause must "exist[] to justify a stop and to trigger a shopkeeper's immunity[.]" Walker v. May Dep't Stores Co., 83 F. Supp. 2d 525, 528 (E.D. Pa. 2000).  "Probable cause has been said to be a fluid concept turning on the assessment of probabilities in particular factual contexts not readily or even usefully reduced to a neat set of legal rules." Id. (citing Ill. v. Gates, 462 U.S. 213, 232 (1983)).  "[It] is determined by the totality of the circumstances based upon a practical, common-sense decision whether, given all the facts presented . . . there is a fair probability that a crime has been or is being committed by the suspect[.]"  Walker, 83 F. Supp. 2d at 528-29.  The facts in this case, when viewed in their totality, show that Ferdinand was stopped because Hanton had observed her pick up a plantain, and exit the store with it via an unmanned check-out aisle.  When asked about the plantain, Ferdinand chose not to show Hanton her receipt even though she was carrying it in her hand, and instead exited the building.  When Hanton then accused her of stealing it, she continued to walk away from him, and still chose not to show him her receipt.  It appears clear from these facts that a reasonably prudent person, viewing the events as Hanton saw them, could believe that Ferdinand was shoplifting produce from Supervalu.

While Ferdinand did not steal any produce from Supervalu, that fact does not dispose of the issue concerning whether Hanton had probable cause to detain her.  Other cases in this court have found probable cause in situations where the evidence clearly showed no shoplifting occurred.  In Ginyard v. The Gap, Inc., No. 96-7112, 1997 U.S. Dist. LEXIS 12775, at *1-2 (E.D. Pa. Aug. 20, 1997), the plaintiff had made various purchases at multiple The Gap and The Gap

Kids stores, including a child's red shirt. Id. at *2. A manager noticed the shirt on top of a bag while the plaintiff was in the store, but did not see the plaintiff purchase the shirt. Id. The plaintiff left and later returned to the store; when she did the manager detained her and questioned her about the red shirt. Id. at *3. That plaintiff stated that she had purchased the shirt at another store, but could not find her receipt. Id. When the manager called the other store, the person who answered was unable to verify the purchase. Id. at *3-4. Ultimately, the plaintiff's sister provided the receipt, and the plaintiff was released. Id. at *4. Even though no theft had occurred, the court found that the defendants had probable cause to detain the plaintiff for suspected shoplifting. Id. at *10. Ferdinand's situation is very similar to the plaintiff in Ginyard, which lends support to a finding of probable cause in the present action.

      This Court must next determine whether Hanton detained Ferdinand in a reasonable manner for a reasonable amount of time. The statute allows a merchant, who has probable cause, to "detain the suspect in a reasonable manner for a reasonable time on or off the premises for all or any of the following purposes: to require the suspect to identify himself, to verify such identification, to determine whether such suspect has in his possession unpurchased merchandise taken from the mercantile establishment and, if so, to recover such merchandise[.]" Pa. Cons. Stat. Ann. § 3929(f).[2] Ferdinand stated that Hanton "blocked [her] from getting into [her] car . . . [and] grabbed [her], up against the door and pushed [her] here and pushed [her] against [her] car and pressed the door and grabbed the box and bring it inside." (Def.'s Mot. Summ. J., Ex. B.

---

[2] The statute does not define the word detain, therefore this Court will use the commonly understood definition of the word which is "to hold or keep in or as if in custody." Webster's Ninth New Collegiate Dictionary 345 (1990).

8

Ferdinand Dep. at 37.) According to Ferdinand, Hanton grabbed her left hand when she tried to get into the car, and retrieved the plantain from her right hand. (Id. at 41.) Immediately after Hanton took the plantain, he went back inside the store, and gave the plantain to the cashier. (Id. at 44.) Ferdinand followed him inside, talked to the cashier, who did not get involved in the dispute, and then said that she wanted to speak to the manager. (Id.) The manager listened to the story, and then asked Ferdinand if she wanted her money back. (Id. at 45.) This whole episode took only a few minutes, and Hanton had only actually detained Ferdinand for a few seconds. Once the manager ascertained that Ferdinand had paid for the produce at the center of this situation, she was free to go. Hanton physically detained Ferdinand for a very short time, with the intention of recovering merchandise that he reasonably believed she may have taken without purchasing.

In Angelopoulus v. Lazarus PA Inc., the Superior Court upheld a determination that placing a person in "handcuffs is not a per se violation of the Retail Theft Act so long as the handcuffs are used to accomplish one or more of the enumerated justifications of a detention." 884 A.2d 255, 260 (Pa. Super. Ct. 2005). In that case, a woman had eaten chocolates from an opened box on a store display thinking that they might be free samples. Id. at 257. A store employee witnessed her eat the chocolates, and asked her to accompany her to the loss prevention office. Id. Once inside, the plaintiff was handcuffed to a table, asked for personal identification, and her person and belongings were searched. Id. The trial court found that the detention was reasonable, and the store was entitled to immunity under the statute. Id. at 260. However, the store continued to detain the woman after this point, and its later actions were not entitled to immunity under Retail Theft Act.

The detention Ferdinand was subjected to was not as serious as the detention in Angelopoulus, which the Superior Court found reasonable. Hanton's action in grabbing Ferdinand's hand to stop her from leaving with store merchandise was much less intrusive that being handcuffed to a table. Thus, this Court finds that the detention at issue in this action was for a reasonable time and in a reasonable manner. Consequently, the Defendants are entitled to immunity from civil liability as expressed in 18 Pa. Cons. Stat. Ann. § 3929 (d). Summary judgment is granted in favor of both Defendants on all counts contained in the Complaint.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOLETTE FERDINAND | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 07-3305 |
| SAVE-A-LOT/SUPERVALU, and SECURITY ASSOCIATES, INC., | : | |
| Defendants. | : | |

## **ORDER**

**AND NOW**, this   14th   day of April, 2008, upon consideration of Defendant Save-A-Lot/Supervalu's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Doc. No. 16), and the responses and reply thereto, it is hereby **ORDERED** that the Motion is **GRANTED** in regard to all Defendants.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE